UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **NORBERTO ANDINO**<br>    **Plaintiff** | ) CIVIL ACTION<br>)<br>) COMPLAINT |
| v. | )<br>) TRIAL BY JURY |
| **COMMERCIAL RECOVERY SYSTEMS, INC.**<br>    **Defendant** | ) DEMANDED<br>)<br>) NOVEMBER 10, 2011 |

## COMPLAINT

1. This is a suit brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA").

2. Plaintiff, Norberto Andino, is a consumer residing in Southington, Connecticut.

3. Commercial Recovery Systems, Inc. ("CRS") is a Texas corporation that accepts assignments of collection accounts from businesses and is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

4. Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331,1337 and 1367, and Fed. R. Civ. P. 18(a).

5. This Court has jurisdiction over CRS because it engages in debt collection within Connecticut.

6. Venue in this Court is proper, as the Plaintiff is a resident and the acts complained of occurred in this state.

7. On September 10, 2005, Plaintiff purchased a used 2004 Buick Rendezvous pursuant to a retail installment sales contract that provided that the balance of the

account would be charged an annual percentage rate of 9.99%, which contract was assigned to Sovereign Bank.

8. The vehicle was purchased for Plaintiff's personal use.

9. In or around February 2007, Sovereign Bank repossessed the vehicle.

10. In or around April 2007, Plaintiff received a letter from Sovereign Bank dated March 29, 2007 claiming a deficiency of $6,786.43.

11. The account was subsequently assigned to CRS for collection.

12. On or around September 6, 2011, CRS sent Plaintiff a collection notice in which it claimed that the amount of the debt owed on the account was $10,280.04.

13. This letter mischaracterized the amount of the debt, because it was substantially in excess of the deficiency claimed by Sovereign, even if the amount claimed included interest at the contract rate and, in any event, the letter did not state that interest was continuing to accrue on the account.

14. On or around September 21, 2011, CRS sent Plaintiff a collection notice in which it repeated the claim that amount owed was $10,280.04; this letter also stated that "funds must be received no later than September 26, 2011 to avoid any further action."

15. The least sophisticated debtor would interpret the September 21, 2011 letter as a threat that legal action might be taken on the account.

16. CRS did not intend to bring a legal action on the account and it could not take legal action because, Plaintiff believes and thereby alleges, it had not received authorization to bring such legal action and, in any event, the debt was past the 4-year

statute of limitations under Conn. Gen. Stat. § 42a-2-725(1) for breach of a contract for sale of goods.

17. On or around October 7, 2011, CRS sent Plaintiff another collection letter in which it claimed that the amount owed on the account was $10,280.04.

18. In or around September 2011, CRS began calling Plaintiff at his place of work.

19. Plaintiff's co-worker received at least one of these calls, and CRS told her that it was attempting to serve papers to Plaintiff at his place of work.

20. This communication was false and deceptive, and it constituted an impermissible communication with a third party.

21. CRS representatives also spoke with Plaintiff at his workplace.

22. During one such conversation, Plaintiff spoke with a CRS representative who identified himself as "John Moore" and who offered a settlement of approximately $4,000.

23. After Plaintiff told the representative that he was unable to pay that amount, "John Moore" told Plaintiff he would be sending a sheriff to serve papers to him at his place of work and that he would be responsible for approximately $16,000 with the inclusion of attorney's fees and court fees.

24. This was a deceptive and false statement, because legal action was neither permitted nor contemplated and because even if such a suit could be brought.

25. Additionally, Plaintiff's exposure to attorney's fees and costs was substantially less than the amount threatened, because attorney's fees are limited to 15% of the

amount of the debt in accordance with Conn. Gen. Stat. § 42-150aa, and the total of court fees and costs would not approach $5,700 as threatened by CRS.

26. CRS has violated the FDCPA by making false statements concerning the amount of the debt, by threatening and implying that it would bring legal action when such action was neither permitted or intended, by communicating with third parties concerning the debt and its collection activity, by seeking to embarrass Plaintiff at his workplace, and by making false statements concerning the amounts that would be collectible for attorney's fees and court costs,

27. Plaintiff has suffered actual damages in the form of emotional distress damages as a consequence of CRS's FDCPA violations.

28. Additionally, CRS's conduct violated CUPTA.

29. CRS's CUTPA violations have caused Plaintiff to suffer an ascertainable loss of money and property in the form of transportation and communication charges associated with speaking with his attorneys and diminished standing, reputation, and productivity at his workplace.

WHEREFORE, the Plaintiffs seek recovery of actual damages (including emotional distress damages), statutory damages, and attorney's fees pursuant to 15 U.S.C. § 1692k and actual damages, punitive damages, and attorney's fees pursuant to Conn. Gen. Stat § 42-110g.

**PLAINTIFF, NORBERTO ANDINO**

By: /s/Daniel S. Blinn
  Daniel S. Blinn, ct02188
  dblinn@consumerlawgroup.com
  Consumer Law Group, LLC
  35 Cold Spring Rd. Suite 512
  Rocky Hill, CT  06067
  Tel. (860) 571-0408; Fax. (860) 571-7457